UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILLY RODRIGUEZ CASTRO,

      Petitioner,

v.

                                     Case No.:  2:26-cv-02171-SPC-KRH

DAVID HARDIN *et al.*,

      Respondents,

                                        /

## <u>OPINION AND ORDER</u>

Before the Court are Billy Rodriguez Castro's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 5), and Roriguez Castro's reply (Doc. 6).

Rodriguez Castro is a native of Cuba who entered the United States on August 22, 2022, to seek asylum.  Immigration and Customs Enforcement ("ICE") commenced removal proceedings by issuing a notice to appear and released him into the country on an order of release on recognizance. Rodriguez Castro timely applied for asylum, and he stayed out of trouble and complied with all terms of the order until August 11, 2025, when local police arrested him for driving under the influence of alcohol.  ICE issued an immigration detainer and took custody of Rodriguez Castro after his release from jail on $1,000 bond.  Rodriguez Castro has been in ICE detention for nearly a year.

On February 20, 2026, Immigration Judge Stuart Siegel ordered Rodriguez Castro removed to Cuba. Rodriguez Castro timely appealed, so the removal order is not administratively final. Rodriguez Castro did not receive a bond hearing until July 1, 2026, when Immigration Judge Scott Alexander denied bond because, "Respondent has not met his burden to establish that he does not present a danger to the community, and that he does not present a risk of flight." (Doc. 5-1 at 1).

Rodriguez Castro asserts two grounds in his habeas petition: his detention violates the Due Process Clause of the Fifth Amendment (Count 1), and Judge Alexander's denial of bond was based on a legal error (Count 2). In response, the government argues Rodriguez Castro's claims are moot because he received a bond hearing. Not so. Rodriguez Castro remains in ICE detention, and his Fifth Amendment claim challenging that detention still "presents a live controversy with respect to which the court can give meaningful relief." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

The government also points to a subsection of the Immigration and Nationality Act that strips the Court of jurisdiction to review an immigration judge's discretionary bond decisions:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

2

8 U.S.C. § 1226(e).  § 1226(e) only partially applies here.  It bars the Court from considering Ground 2, which is a direct challenge to the immigration judge's bond decision.  But the Court can consider Rodriguez Castro's bona fide due process claim challenging the constitutionality of his current, prolonged detention.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  Immigration detention is civil in nature, and civil detention violates the Fifth Amendment unless "a special justification…outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976).  Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

3

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Rodriguez Castro's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. While there is no hard limit on how long a noncitizen can be detained under § 1226(a), the longer the duration of Rodriguez Castro's detention, the greater the deprivation of his right to liberty. In the context of post-removal-order detention under § 1231, the Supreme Court limited the presumptively reasonable period of detention to six months. *Id.* at 701. The Court noted "that Congress previously doubted the constitutionality of detention for more than six months." *Id*.

As the Supreme Court recognized in *Zadvydas*, facts that justify a brief period of detention might not justify a longer period of detention. *See id.* ("as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). The fact that Rodriguez Castro's detention now exceeds eleven months and could continue indefinitely raises constitutional concerns. But under the status quo, Rodriguez Castro has no opportunity to address them. The Court sees value in additional safeguards, like a bond hearing in which the government bears the burden of proof. *See Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir.

4

2020) (comparing the ease with which the government can gather evidence with the hurdles faced by a noncitizen in prolonged detention).

Third, the government has not established any legitimate interest in continuing to detain Rodriguez Castro without presenting a justification. Remember: Judge Alexander put the burden of proof on Rodriguez Castro. At no point since his detention began August 2025 has ICE been required to show that either goal of immigration detention—to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community—outweighs Rodriguez Castro's right to be free from physical restraint. A bond hearing where the government bears the burden of proof will preserve the two goals of immigration detention while accounting for the government's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.

The Court will thus order the respondents to either bring Rodriguez Castro before an immigration judge for another bond hearing within ten days or release him under reasonable conditions of supervision while his removal proceeding is pending. To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announced in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and the government must bear the burden of proof to justify continued detention. If the respondents are unable to ensure Rodriguez Castro

5

receives a bond hearing that complies with this Order within ten days, they must release him, but they may impose reasonable terms of supervision.

Accordingly, it is hereby

**ORDERED**:

Billy Rodriguez Castro's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

(1)     Within **ten days** of this Opinion and Order, the respondents shall either (1) bring Rodriguez Castro for an individualized bond hearing before an immigration judge or (2) release Rodriguez Castro under reasonable conditions of supervision.   If the respondents release Rodriguez Castro, they shall facilitate his transportation from the facility by notifying his counsel when and where he can be collected.

(2)     The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 3, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties or Record

6